Armistead *et al.*, *vs.* Armistead, ex'or.

---

JOHN ARMISTEAD, *et al.*, plaintiffs in error, *vs.* JAMES A. ARMISTEAD, executor, etc., defendant in error.

1. A testator, by his will, gave to certain of his children specific and definite pecuniary legacies—by the third item he gave to one of his sons "one equal share of whatever property, real or personal, remains," after he had given and bequeathed the property stated in each separate item to each individual child—by the fifth item he gave to one of his daughters and her bodily heirs, "a full share of whatever property remains," after what was specifically bequeathed—and by the eleventh item, he gave to another one of his sons, "one-fourth of a share of the property remaining after each child shall have received

the amount specified in each separate item:" *Held,* that parol evidence of the verbal declarations of the testator are inadmissible to prove what he meant by the word "share" in the third, fifth and eleventh items of his will : *Held also,* that that part of the will which attempts to dispose of the residue of testator's estate remaining after payment of the specific legacies, was void for uncertainty, and that as to such residue the testator died intestate.

Bill in equity, in Walton Superior Court, and decision by the Hon. NATHAN L. HUTCHINS, at the February Term, 1861.

On the 30th of October, 1856, John Armistead made and published in due form his last will and testament, which after directing the payment of his debts, contained the items following, that is to say :

" ITEM 1st. I give and bequeath to my daughter Betsey Daniel, and to her lawful children, five hundred dollars."

" ITEM 2d. I give and bequeath to my son William Armistead, one stud-horse and four hundred dollars."

" ITEM 3d. I give and bequeath to my son John Armistead, junior, one equal share of whatever property, real or personal, remains, after I have given and bequeathed the property stated in each separate item, to each individul child."

" ITEM 4th. I give and bequeath to my son James A. Armistead, one negro boy, Andy."

" ITEM 5th. I give and bequeath to Albon Weaver ten dollars, and to Nancy Ann Weaver, my daughter, and her bodily heirs, a full share of whatever property, real or personal, remains, after I have given and bequeathed the property stated in each separate item to each individual child."

" ITEM 6th. I give and bequeath to Keziah Hightower, my daughter, and her bodily heirs, fifty dollars."

ITEM 7th. I give and bequeath to my son Jesse M. Armistead, six hundred dollars."

" ITEM 8th. I give and bequeath to my son Thomas W. Armistead, six hundred dollars."

" ITEM 9th. I give and bequeath to my son Virgil Homer Armistead, six hundred dollars.

ITEM 10th. I give and bequeath to James W. Street, my

son-in-law, ten dollars; to my daughter Almoune Streat, and her bodily children, five hundred dollars; and to the son of Almoune Streat and James W. Streat, named John Armistead Streat, one hundred dollars.

ITEM 11th. I give and bequeath to my son Jabez J. Armistead, one-fourth of a share of the real and personal property remaining after each child shall have received the amount specified in each separate item."

The 12th item nominates James A. Armistead and John Armistead as executors of the will, giving the former the chief management.

The testator died leaving the will in force, and the same was duly proven by the executor, James A. Armistead, to whom letters testamentary were issued.

The executor filed a bill in Walton Superior Court against all the legatees, praying a construction of the will, and direction as to its proper execution, especially with reference to the construction of the 3d, 5th and 11th items, so as to determine the share of John Armistead under the 3d, of Nancy Ann Weaver under the 5th, and of Jabez J. Armistead under the 11th item of said will.

After paying the specific and general legacies there would remain from $4,200 00 to $4,400 00 of the testator's estate, to be divided between the residuary legatees.

Upon the trial of the case counsel for John Armistead proposed to prove by one of the subscribing witnesses to the will, that whilst it was being written, and after willing Virgil Armistead fifty dollars, the testator observed that it was fifty dollars more than he ought to have; that to Jabez J. Armistead he willed the fourth of a share, and said that that was all he intended him to have; that witness also heard testator say that what was given in the will to William Armistead, was all he intended him to have; that the will was written as testator directed, and after being written, was read out to him, and then executed in the presence of the witness; that from what he heard testator say, the witness has no doubt but that he was mistaken as to the amount of his property.

Upon objections thereto, this testimony was repelled by the Court, on the ground, that these verbal declarations of the testator were inadmissible to construe his will, because to the extent that they go, they make, instead of construe the will.

The presiding Judge also decided, that the residuum of the estate, after payment of expenses and the specific and definite pecuniary legacies, should be divided into eleven equal shares, and one-fourth of one of said shares be paid to Jabez J. Armistead, and one of said shares be paid to each of the remaining ten children, and the remaining three-fourths of one share left after, paying Jabez J. Armistead his one-fourth, be held by the execution in trust for the heirs-at-law of the testator, each being entitled to one-eleventh part thereof.

A verdict was rendered in conformity to this construction of the will, and the defendants in the bill excepted, and allege that the Court erred in said construction of the will, and in rejecting the testimony offered as to the verbal declarations of the testator hereinbefore stated.

CHARLES D. DAVIS, for plaintiff in error.

HULL and HILLYER, *contra.*

*By the Court.*—LUMPKIN, J., delivering the opinion.

What is a share of the testator's estate? Does the residuum have to be divided into three parts, and are the legatees mentioned in the third, fifth and eleventh items of the will alone entitled to it; or is his remaining property, real and personal, after deducting the eight specific legacies, to be divided into eleven parts; and are all entitled to participate?

It is impossible to solve this question with any certainty. We guess and conjecture, this is all. One of the Court adopted the former opinion—the other two Judges the latter—though all admitted that there was too much doubt and uncertainty attending the matter to arrive at any satisfactory conclusion. The same decision would characterize the common, as well as the legal mind, upon this point.

Is parol testimony admissible to aid the construction? We think not—most clearly. The word *share* is not equivocal in its meaning—something must be added to the testimony to solve the question—and such was the purpose of the parol proof offered. But this is inadmissible. Parol evidence cannot be received to add to a will; and although the distinction between latent and patent ambiguities, when examined, is wholly unphilosophical, and founded upon a scholastic quibble of Lord Bacon, yet in no event can this will be helped by parol proof. What I have said of ambiquities is not judicial; I speak as a man. But to justify myself, take the familiar example in the books, of a latent ambiquity; a testator bequeaths a legacy to John Smith, of Athens. There are two John Smiths, and parol proof is allowed to show which was intended. That very proof makes the will of a testator *pro tanto*. And yet if the same testator gives a specific legacy to his wife and neice, and says, in addition to what I have given *her*, I bequeath to *her* the rest of my property remaining at my death, you can not, by parol, prove which *her* was meant, whether the wife or the neice.

Our conclusion is, to direct the specific legacies to be paid, and to declare the rest of the will, which attempts to dispose of the residue of his estate, void, for uncertainty, and to declare an intestacy as to that; and under our statute, the executor holds it as trustee for the next of kin.

Let the judgment be reversed.